Gordon W. KAISER and J. J. Kaiser,
his wife, Appellants,

v.

Walter CROUCH, Jr., et al., Appellees.

No. 43900.

Supreme Court of Oklahoma.

Dec. 5, 1972.

Meacham, Meacham & Meacham, Clinton, for appellants.

John W. Donley, Weatherford, for appellees.

DAVISON, Vice Chief Justice:

The proper disposition of this action and cross-action to quiet title depends upon the proper application of 15 O.S.1961, § 174, which says, "Time is never considered as of the essence of a contract, unless by its terms expressly so provided."

There follows a statement of the undisputed facts which call for the application

of § 174. The son of Gordon W. Kaiser and J. J. Kaiser, his wife (Plaintiffs) and a few of his fraternity brothers in Beta Tau Beta, a local fraternity at Southwestern State College, Weatherford, Oklahoma, induced plaintiffs, for a consideration of $1175.00, to convey to the named trustees of Beta Tau Beta, (a part of the defendants) the surface rights only in a portion of Lot 1 of Davis Addition to Weatherford, Oklahoma. The trustees made the purchase to provide a plot for the construction of a fraternity house. During the negotiations, plaintiffs indicated their desire to regain title and possession of the plot by paying the purchase price, $1175.00, in case a fraternity house was not constructed. The trustees suggested a time limit of five (5) years, but plaintiffs suggested ten (10) years. Accordingly, following the land description in the granting clause of the Warranty Deed from plaintiffs to the Trustees of Beta Tau Beta, the following provision appears:

"Grantees herein agree that within 10 years from the date of this deed [3rd day of March, 1959] to construct on said real property above described a Fraternity house and other improvements and if not constructed, grantors to have right to purchase back said property or any portion thereof at the original purchase price."

The Trustees of Beta Tau Beta paid $450.00 of the $1175.00 and executed on March 3, 1959, their note and mortgage for $725.00. This note has been paid and the mortgage released of record.

On February 3, 1965, plaintiffs and R. W. Thatcher agreed in writing that in case a fraternity house and other improvements were not constructed on the land described in the deed of March 3, 1959, within 10 years from March 3, 1959, plaintiffs will exercise their right to repurchase said land and, upon exercising said right, will execute a good and valid Warranty Deed to Thatcher covering said land for a consideration of $2250.00.

The local fraternity, Beta Tau Beta, had not been able to finance the construction of a fraternity house and in 1963, suggested to plaintiffs that Beta Tau Beta, who then remained a local fraternity, reconvey the plot to plaintiffs, but at that time plaintiffs were not interested in repurchasing the property.

Finally, in 1964, Beta Tau Beta, the local, upon its application, became a colony of Pi Kappa Alpha, a national Fraternity, under the name of Zeta Zeta Chapter of Pi Kappa Alpha. A colony in the college fraternity world is a local group, under investigation by the national organization for the purpose of determining whether to admit the local group into the national organization. A year later, the Zeta Zeta colony became the Zeta Zeta Chapter of Pi Kappa Alpha. On January 14, 1969, a conveyance of the fraternity house site was made by the Trustees of Beta Tau Beta to the Zeta Zeta Chapter of Pi Kappa Alpha.

After arrangements were made with the Pi Kappa Alpha Holding Corporation to finance the construction of the fraternity house, the Zeta Zeta Chapter of Pi Kappa Alpha on January 21, 1969, contracted with A. J. Sawatzky, a highly reputable construction contractor, to do the job in 120 days pursuant to plans approved by Pi Kappa Alpha. About a week after the execution of the contract, Sawatzky commenced work. By the time plaintiffs had commenced this action on March 3, 1969, Sawatzky "had leveled the ground and put the footing and foundation in" for which he was paid $2000.00. Pending the outcome of this litigation, work was suspended.

On the basis of these undisputed facts, adequately plead by plaintiffs and defendants, plaintiffs in their petition prayed that title to the land conveyed by the Warranty Deed of March 3, 1959 be quieted in plaintiffs against the claims of defendants upon plaintiffs' payment of $1175.00 to such person or persons as the court may direct. The defendants are the named Trustees of

Beta Tau Beta, the named successor Trustees of Beta Tau Beta, Zeta Zeta Chapter of Pi Kappa Alpha National Fraternity and Gayle Burnham, Max Lee, Steel Hutto and Don Kelley, Trustees of Zeta Zeta Chapter of Pi Kappa Alpha National Fraternity. The latter trustees prayed in their cross-action that their title to the land in controversy be quieted in them against the claims of plaintiffs and that said defendants be adjudged to be the same entity as Beta Tau Beta, having the same rights and consequences.

The trial court, finding, among other things, (1) that the Zeta Zeta Chapter of Pi Kappa Alpha succeeded to Beta Tau Beta's right to relief; (2) that on March 3, 1969 the Zeta Zeta Chapter of Pi Kappa Alpha had begun the erection of a fraternity house with assured financing for its completion; and (3) that defendants should have a short additional time within which to complete the building of the fraternity house, on the property in question, decreed that defendants be granted 120 days from the date this judgment becomes final within which to complete the fraternity house on the site in accordance with the plans as started, and if completed the plaintiffs' right to repurchase would terminate and a supplemental judgment be issued quieting title in the defendants. It was further ordered by the trial court that if the fraternity house is not completed within such time, the plaintiffs' right to repurchase would be activated and specific performance granted to reconvey the property to the plaintiffs upon their payment of $1175.00 consideration to defendants and a supplemental judgment be issued quieting title in plaintiffs against the claims of defendants.

The plaintiffs, in their brief, do not question the trial court's finding that the Zeta Zeta Chapter of Pi Kappa Alpha succeeded to Beta Tau Beta's right to relief. The plaintiffs do urge that the trial court committed error in decreeing that defendants be granted 120 days from the date the judgment becomes final within which to complete the fraternity house on the land in controversy.

The record on appeal contains a memorandum prepared by the trial judge delineating the legal reasons for his judgment. It was the conclusion of the trial judge that the provision quoted above in the deed of March 3, 1959 is a contractual option to repurchase and that the option is subject to 15 O.S.1961, § 174 set forth in the first paragraph of this opinion. The plaintiffs agree with the trial judge's view that the language in the deed is the statement of an option to re-purchase, but insist that in the case of an option time is of the essence and § 174 does not apply.

█ We agree with the trial judge that § 174 applies, that time is not of the essence of the contract. The language of the deed does not give expression to the idea that time is of the essence of the option. There is nothing in the language of the deed to support an implication that time is of the essence of the contract. The relationship of the parties at the time the contract was made and their negotiations and subsequent relations is barren of any notion that the parties intended that time is of the essence of the contract.

█ We are, nevertheless, faced with the need for an explanation of the following expression in Washoma Petroleum Co. et al. v. Eason Oil Co., 173 Okl. 430, 49 P. 2d 709:

"There are many exceptions in case of optional contracts to the above section which has been construed in many cases, and the rule is stated thus: 'In case of an option time is of the essence of the contract, unless the contract expressly provides that it shall not be.' Mitchell v. Probst, 52 Okl. 10, 152 P. 597, 598. To the same effect is Crutchfield v. Griffin, 139 Okl. 35, 280 P. 1075, and cases cited therein."

Surely we did not by judicial fiat amend § 174 by adding thereto the expression, "except in the case of an option to purchase land." To do this would, of course, be ob-

noxious judicial legislation. What we did do was to hold that the words, "unless by its terms expressly so provided" meant that if the language of an option as applied to the parties and the subject matter made it clear that the parties intended that "time is of the essence" the "unless" clause of § 174 is thereby satisfied.

In applying this interpretation to the drilling clause of an oil and gas lease, we said in Mitchell v. Probst, 52 Okl. 10, 152 P. 597:

"But this statute does not mean that time is never the essence of a contract, unless these words are used in it. In Cooper v. Ft. Smith & W. R. Co., 23 Okl. 139, 99 Pac. 785, it is held:

'Although it is provided (Wilson's Rev. & Ann.St.1903, § 809) that "Time is never considered as of the essence of a contract, unless by its terms expressly so provided," no particular form of expression is required, but it must appear from the express provisions contained in such contract that it was the intention of the parties thereto that time should be the essence thereof.' Federal Trust Co. v. Coyle, 34 Okl. 635, 126 Pac. 800; Green Duck Co. v. Patterson, 36 Okl. 392, 128 Pac. 703.

The language of this contract is set out above, and, in our opinion, brings it within the reasoning of the above citations."

See Cooper v. Ft. Smith & W. R. Co., 23 Okl. 139, 99 P. 785.

Again, in Crutchfield v. Griffin, 139 Okl. 35, 280 P. 1075, 1077, we said:

"The general rule, as provided by section 5061, C.O.S.1921, that time is never of the essence of a contract, unless by the terms of the contract it is expressly so provided, has been construed in many cases, and there appear to be many exceptions in case of optional contracts.

It has been held that no particular form of expression is required, if it appears from the provisions contained in the contract that it was the intention of the parties that time should be of the essence thereof."

It is thus clear from our decisions that we, in fact, did not carve an exception to § 174. We merely recognized that as to some options, due to the subject matter to which they apply, it is clear that the parties intended that time be of the essence.

Applying the rationale of our decisions, the trial court's judgment that the parties did not intend that time be of the essence of the option to repurchase is not only not against the clear weight of the evidence, Ruble v. Phillips Petroleum Company, Okl., 385 P.2d 116, but is supported by the clear weight of the evidence.

Affirmed.

All Justices concur.