## WATKINS v. McCOMBER.

No. 34487.   Nov. 18, 1952.

Rehearing Denied April 21, 1953.

*256 P. 2d 158.*

Keaton, Wells, Johnston & Lytle and Richardson, Shartel & Cochran, Oklahoma City, for plaintiff in error.

Albert·L. McRill, Oklahoma City, for defendant in error.

O'NEAL, J.   George Raymond McComber, plaintiff below, will be referred to as plaintiff and Earl A. Watkins, defendant below, as defendant. Other named defendants in the trial court did not join in the defendant's appeal.

Succinctly stated, the petition alleges that Flora Alberta Cloonan, hereafter referred to as Mrs. Cloonan, was the grandmother of plaintiff, and that the defendant, Earl A. Watkins, was her son, and that certain named individual defendants were her grandchildren. Mrs. Cloonan died in March, 1947, testate. Her will designated defendant as executor. Planitiff's mother, a

daughter of Mrs. Cloonan, died, leaving plaintiff, then five years old, in the custody of the grandmother for his care and education during his minority. The petition states that after the death of plaintiff's mother, plaintiff's father and Mrs. Cloonan entered into a verbal agreement to the effect that in consideration of plaintiff remaining with his grandmother during his minority that she would leave him by will upon her death property from her estate of the value of $10,000.

That after plaintiff reached his majority and in June, 1944, Mrs. Cloonan placed building and loan stock in the named associations, and of the value of $10,000 or more, in her and plaintiff's name as joint tenants, with right of survivorship.

That in August, 1944, without plaintiff's knowledge or consent, Mrs. Cloonan placed the identical stock in the associations in her and the defendant's name, in which names it stood at the time of her death; that defendant assisted Mrs. Cloonan in placing said stock in their names as joint tenants with full knowledge that it then stood in the names of Mrs. Cloonan and plaintiff as joint tenants with right of survivorship; that thereafter, in May, 1946, Mrs. Cloonan executed the will under which she bequeathed plaintiff and each of her other grandchildren named, the sum of $1,000, and bequeathed the residue of her estate, valued at $25,000 to the defendant. The prayer seeks equitable relief and for specific performance against the defendant, Earl A. Watkins, as executor of the estate of Mrs. Cloonan, and also against him individually as follows: First, that the contract between Mrs. Cloonan and plaintiff be fully complied with, and, second, that the stock in the building and loan associations which are standing in the name of Mrs. Cloonan and the defendant, be impressed with a trust to the extent of the value thereof. Other equitable relief is sought which need not be specifically referred to.

Certain admissions are contained in defendant's answer, as follows:

(1) Defendant admits that the building and loan associations have issued certificates of stock which now stand in the name of Mrs. Cloonan and the defendant.

(2) Defendant admits that Blanch Ella McComber, Mrs. Cloonan's daughter and plaintiff's mother, died in 1925, leaving plaintiff, her only child, in the care and custody of Mrs. Cloonan.

(3) Defendant admits that Mrs. Cloonan placed in her and plaintiff's joint names, in the two named building and loan associations, the funds evidenced by the certificates of stock referred to in plaintiff's petition.

(4) Defendant denies that Mrs. Cloonan made any agreement with plaintiff's father of the character alleged in plaintiff's petition, and denies that plaintiff rendered any services to his grandmother, or acted for her as her agent in the management of her business, and finally, defendant alleges that Mrs. Cloonan did not intend to give plaintiff the building and loan stock, or give him any interest therein, but that she at all times remained the owner thereof, and that the disposition of the stock is expressed in her last will and testament. All other allegations of the petition are specifically denied.

By reply plaintiff states that the defendant procured Mrs. Cloonan, his mother, by threats, duress and undue influence to have the stock in the association reissued in defendant and her joint names, and thereby committed a fraud upon her and this plaintiff.

A review of the testimony establishes that plaintiff's father, in various conversations had with Mrs. Cloonan, shortly after his wife's death in 1925, agreed to leave his minor son, then five years of age, with the grandmother until he reached his majority, and in consideration Mrs. Cloonan agreed

that she would leave plaintiff an estate valued at approximately $10,000; that in a subsequent conversation, after plaintiff married, Mrs. Cloonan advised plaintiff's father that she had invested certain funds in the building and loan associations for the benefit of the plaintiff.

A neighbor of Mrs. Cloonan testified that on numerous occasions Mrs. Cloonan stated that she had great affection for her grandson and intended leaving him a substantial portion of her estate; that in 1941, Mrs. Cloonan exhibited two pass books and stated that she was leaving approximately $10,000 of funds in the associations to the plaintiff. Another witness testified that subsequent to 1923, she visited at the home of Mrs. Cloonan, frequently, and that either in 1925 or 1926, Mrs. Cloonan stated that she had on deposit certain monies in the building and loan associations for George, and that on several occasions she accompanied Mrs. Cloonan to the offices of the building and loan associations where deposits were made to the credit of Mrs. Cloonan's accounts; and that Mrs. Cloonan stated that the money upon her death would belong to the plaintiff.

Plaintiff testified that in June, 1944, he accompanied his grandmother to the office of the Security Federal Building & Loan Association where Mrs. Cloonan and he executed an application for membership and a share account in the association in their joint names as joint tenants, with right of survivorship, and not as tenants in common; that on the same day they visited the office of the Local Federal Savings & Loan Association where a like transaction was had.

At the close of plaintiff's evidence defendant interposed a demurrer thereto which was overruled with exceptions saved. Defendant introduced no evidence in support of the affirmative allegations contained in his answer.

The court found generally in favor of the plaintiff and against the defendant, Earl A. Watkins, individually, and further found that the plaintiff should take nothing as against the defendant, Earl A. Watkins, as executor of the estate of Flora Alberta Cloonan, deceased, nor *against the individual defendants legatees under the will.

The court further found that the plaintiff should recover judgment against the defendant, Earl A. Watkins, individually, and adjudged plaintiff the sole owner of the certificates and accounts in both of said named associations, and ordered the associations to reinstate the certificates with all rights incident thereto in plaintiff's name, and ordered the defendant, Earl A. Watkins, to surrender the certificates held by him for cancellation, together with the costs incurred.

For reversal of the judgment defendant contends that the judgment was not only erroneous but void, because rendered upon a cause of action not sued upon.

Defendant correctly states the rule that a petition, declaration or complaint should inform the defendant of the nature, character and purpose of the suit in order that he may intelligently make his defense to it.

The petition in the instant case pleaded an oral contract entered into between Mrs. Cloonan and her son-in-law, that if the plaintiff was permitted to remain with her until he reached his majority she would leave him a substantial portion of her property. The petition also alleged that Mrs. Cloonan, in her lifetime, conveyed the two certificates of stock in the associations by assigning them to herself and plaintiff, and that thereafter, without plaintiff's knowledge or consent, Mrs. Cloonan wrongfully transferred the certificates to the defendant, and the petition prayed that the defendant be restrained from disposing of the certificates, and for a final judgment against him individually, and that the certificates be held in trust for plaintiff's benefit.

Defendant did not move to separately state the causes of action commingled in the petition, neither did he move for a more definite statement, but filed an answer denying certain allegations of the petition, and admitting others.

The defendant specifically denied that the plaintiff had any interest, right or ownership in the certificates of stock, and pleaded his ownership thereof. The answer specifically admits that at one time the certificates were placed in the joint names of Mrs. Cloonan and plaintiff, but states that Mrs. Cloonan's purpose of doing so was not to give the certificates to plaintiff, or to give him any interest therein, and that Mrs. Cloonan at all times remained the owner thereof. The issue was thus sharply delineated whether plaintiff owned the certificates and the proceeds of the funds, or whether by reason of the subsequent transaction referred to in defendant's answer, he was the owner thereof.

Furthermore the record discloses plaintiff's counsel upon trial advised the court that the crux of the lawsuit and the question of decision was, whether the deceased, Mrs. Cloonan, the plaintiff and the associations entered into an irrevocable joint tenancy agreement, with right of survivorship. In response defendant's counsel stated:

"Now, we quite frankly admit that, at one time, there was in the name of the plaintiff and the grandmother, some Building and Loan association stock * * * and that she changed it back."

In Welch v. Ruby, 200 Okla. 586, 198 P. 2d 432; Vinson v. Oklahoma City, 179 Okla. 590, 66 P. 2d 933, and in Jackson v. Jackson, 196 Okla. 580, 167 P. 2d 51, we held that a court of equity which obtained jurisdiction of the controversy on any ground or for any purpose will retain such jurisdiction for the purpose of administering complete relief and doing entire justice with respect to the subject matter, and to avoid multiplicity of suit.

As we have indicated, the petition, as well as the statements of counsel, clearly presented for judicial determination the ownership of the certificates of stock in the association. If arguendo it be conceded that the pleading is not as specific as desired, the court will treat the pleading as amended upon an issue which has been fully tried, where it is clearly shown that no substantial prejudice results to either party to the action. Anderson v. Miller, 172 Okla. 480, 45 P. 2d 499.

In our view, the pleadings of the respective parties were adequate to frame the issue for trial, and to properly forecast and present for adjudication the claims of the respective parties. We, therefore, hold that the judgment is neither erroneous nor void upon the assignment stated.

The defendant next contends that the facts pleaded and proven did not show that plaintiff had become the owner of the stock and, therefore, he was not entitled to a judgment in his favor. The argument advanced is that if the plaintiff became the owner of the stock, it could only be by gift, and that the plaintiff failed (a) to plead or prove a valid gift; (b) failed to plead and prove a donative intent on Mrs. Cloonan's part, delivery to him, relinquishment of dominion and control by Mrs. Cloonan, or acceptance by plaintiff; and (c) that there was no joint tenancy, but if there was, plaintiff was only entitled to one-half of the stock, whereas he was awarded all of it.

We first give consideration to the transaction disclosed between Mrs. Cloonan and the associations, and then the transactions between Mrs. Cloonan the plaintiff, and the associations.

Mrs. M. M. Brown, who was in charge of the installment records of the Local Federal Savings & Loan Association, testified that on June 16, 1944, Mrs. Cloonan transferred a certificate, then in her name, to herself and plaintiff; that at the same time Mrs. Cloo-

nan and plaintiff executed an application for membership and for a savings share account in the association in Mrs. Cloonan's and plaintiff's name as joint tenants, with right of survivorship; that the account was originally opened in the association by Mrs. Cloonan in 1938, and deposits were made therein periodically to January, 1945.

Mr. H. C. Irvin, secretary-treasurer of Security Federal Savings & Loan Association, identified the account of Mrs. Cloonan opened in January, 1939; identified the transfer of the account by Mrs. Cloonan to herself and plaintiff, and identified the application for membership in their joint names with right of survivorship. He testified that this transaction occurred on June 16, 1944. The officers of the named associations testified that Mrs. Cloonan and the defendant, Earl A. Watkins on August 18th and 22nd, respectively, 1944, had the accounts changed to place them in the name of Mrs. Cloonan and the defendant.

The transfer of the share account and membership and the application card and agreement executed by Mrs. Cloonan and plaintiff requesting membership and transfer of the accounts of the two associations are identical, except the name of the associations. A facsimile of the instrument follows:

"Account No. 236

"(1) F. A. Cloonan, or George R. McComber

"(2) Joint Tenants, and in case of the Death of Either, the Survivor to be the Sole Owner

"(3)

"The undersigned hereby apply for a membership and for a Savings share account in the

"Local Federal Savings and Loan Association of Oklahoma City

and for the issuance of evidence of membership in the approved form in the joint names of the undersigned as joint tenants with the right of survivorship and not as tenants in common. Receipt is hereby acknowledged of a copy of the charter and by-laws of said association. Specimens of the signatures of the undersigned are shown below and the association is hereby authorized to act without further inquiry in accordance with writings bearing any such signature; it being understood and agreed that any one of the undersigned who shall first act shall have power to act in all matters related to the membership and any share account in said association held by the undersigned whether the other person or persons named in the certificate be living or not. The repurchase or redemption value of any such share account or other rights relating thereto may be paid or delivered in whole or in part to any one of the undersigned, who shall first act, and such payment or delivery or a receipt or acquittance signed by any one of the undersigned shall be a valid and sufficient release and discharge of said association.

"(1) Signature F. A. Cloonan

George R. McComber

. . . . . . . . .        . . . . . . . . . .
Street Address          Street Address

. . . . . . . . .        . . . . . . . . . .
City and State          City and State

"Dated 6-16-44          Introduced by

"This certificate issued pursuant to this application for membership of joint holders must be filled out by inserting in the first blank space the names of the joint holders; for example, 'John Doe and Richard Roe,' immediately followed by the words: 'as joint tenants with the right of survivorship and not as tenants in common.' Joint tenants with the right of survivorship constitute one member as a partnership constitutes one member.

"(b) Membership of joint holders (with right of survivorship) of a share account"

The defendant argues that joint tenancy with right of survivorship is not regarded with favor in Oklahoma. Citing Clinton v. Clinton, 187 Okla. 144, 101 P. 2d 609, Kilgore v. Parrott, 197 Okla. 77, 168 P. 2d 886. However, the

cited cases expressly state that the rule has no application where it is clearly shown upon the face of the instrument that a joint tenancy with the right of survivorship was intended.

The defendant also contends that Title 60 O.S. 1951 §74 (Laws 1945, p. 213), which expressly authorizes the execution of an instrument creating a joint tenancy, has no application, as the Act was enacted subsequent to the transaction here involved. The Act, however, provides:

"The provisions of this act shall apply to all estates in joint tenancy or tenancy by entirety in either real or personal property heretofore or hereafter created."

We need not here decide whether the 1945 Act, supra, may be applied retroactively, for we have uniformly held that joint tenancies, with right of survivorship, are enforceable in Oklahoma; neither is the legal effect of a joint tenancy as defined in the statutory enactment, supra, modified by the absence of the term "or the survivor of them."

In the case of Draughon et ux. v. Wright, Adm'x, 200 Okla. 198, 191 P. 2d 921, we held:

"We cannot agree that 60 O.S. 1945 Supp. § 74 creates a statutory joint tenancy without survivorship because survivorship is not mentioned in that statute. The term 'joint tenancy' had a well defined meaning at common law, and, since the Legislature did not define the term or use language indicating a contrary intention, we must presume that it used the term in its technical common law sense."

The foregoing decision was based upon the common law meaning of a joint tenancy with survivorship. The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general Statutes of Oklahoma. Title 12 O.S. 1951 §2.

Blackstone's Commentaries upon common law as applied to joint tenancies makes the following observations. The creation of an estate in joint tenancy depends upon the wording of the deed or devise, by which the tenants claim title, and can only arise by the act of the parties; for joint tenants have one and the same interest. He further says that the interest of the two joint tenants is not only equal or similar, but also is one and the same, and that each of the two joint tenants has a concurrent interest in the whole; and therefore, on the death of his companion, the sole interest in the whole estate remains to the survivior.

When Mrs. Cloonan made the transfer of her accounts in the associations to herself and plaintiff in the form and manner shown by the record, the joint tenancy came into being. The joint tenants then applied for "a membership and a savings share account" in the associations. The applications requested that:

"Evidence of membership in the approved form in the joint names of the undersigned as joint tenants with the right of survivorship and not as tenants in common."

A reading of the application card and agreement executed by F. A. Cloonan and George R. McComber, as joint tenants, supra, conforms to the pattern of Tit. 18, sec. 212b (Session Laws of 1937, p. 319, §3). The legislative act in effect was designed to protect the associations by giving them a statutory acquittance upon the payment of the funds in the joint tenancy account, either to the joint tenant who first acts or in case of no action during the lifetime of a joint tenant that payment to the survivor shall give the association a full acquittance. Although the account stands in the joint names of two persons such a joint account creates a single membership in the association which is subject to disposal by either joint tenant during their lifetime as between the joint tenants and the association.

The statute does not modify in any degree the right, title or interest in the

joint account, or the proceeds thereof, as between one joint tenant and the other joint tenant as the law of joint tenancy establishes their rights.

The statute, supra, reads:

"Every building and loan association and every Federal Savings and Loan Association may issue shares or membership certificates in the joint names of two or more persons or their survivor, in which event any of such persons who shall first act, shall have power to act in all matters relating to the shares or the membership, whether the other person or persons named in such shares or membership certificates be living or not. Such a joint account shall create a single membership in an association. The repurchase or redemption value of an account issued in joint names and dividends thereon, or other rights relating thereto, may be paid or delivered, in whole or in part, to any of such persons who shall first act, whether the other person or persons be living or not. The payment or delivery to any such person or a receipt or acquittance signed by any such person to whom any such payment or any such delivery of rights is made, shall be a valid and sufficient release and discharge of an association for the payment or delivery so made."

Under the quoted statute and the application for the transfer of the share account, Mrs. Cloonan had the right to withdraw or transfer the funds as she did so far as the associations were concerned. This transfer had it been to an innocent third person for value would have been effective so far as plaintiff is concerned. However, the defendant having full knowledge of the circumstances connected with the creation of the joint tenancy originally, and not being an innocent third party purchaser for value, took his interest in the second joint tenancy subject to plaintiff's vested right, which right may now be invoked and enforced as against the funds to the credit of the defendant, Watkins, in possession of both associations.

Defendant further contends that the gift of funds by Mrs. Cloonan to the plaintiff was not effective for the reason that she had the right to the use of the funds during her lifetime. She had this independent right both under the "application agreement" and as a joint tenant, as defined by the Act, supra. The record, however, discloses that Mrs. Cloonan at no time withdrew any of the funds from the associations after their transfer to herself and the plaintiff.

As between Mrs Cloonan and the plaintiff, as joint tenants, the attempted transfer of the funds in the associations to herself and the defendant, Watkins, as joint tenants, was ineffectual and subject to the vested rights of the plaintiff to recover such funds upon tracing them into the hands or under control of the defendant as herein outlined.

We find no merit in defendant's contention that the assessment of cost against him was erroneously entered.

Both parties to the present action have submitted elaborate briefs containing citation of authorities from sister states, and analysis and minute consideration of which will unduly lengthen the opinion. Moreover, we are of the view that the statute and decisions here referred to are decisive of the question presented.

The judgment of the trial court is, therefore, affirmed.

HALLEY, V.C.J., and WELCH, CORN, GIBSON, and DAVISON, JJ., concur.