**In re Landis James FUKSA, Debtor.**

**In re Martha Josephine FUKSA Debtor.**

**WAUKOMIS STATE BANK, Plaintiff,**

**v.**

**Martha Josephine FUKSA and Landis James Fuksa, Defendants.**

Bankruptcy Nos. 81–00542, 81–00541. Adv. Nos. 81–0146, 81–0147.

United States Bankruptcy Court, W. D. Oklahoma.

Sept. 29, 1982.

Jon R. Ford, Enid, Okl., for debtors.

Leslie L. Conner, Jr., Oklahoma City, Okl., for plaintiff.

### FINDINGS, CONCLUSIONS AND JUDGMENT

DAVID KLINE, Bankruptcy Judge.

### PRELIMINARY STATEMENT

On March 20, 1981, Martha and Landis Fuksa each filed chapter 13 proceedings in this court. Thereafter this matter came on for hearing after required notice upon the plaintiff, Waukomis State Bank's objection to the dischargeability of a debt under 11 U.S.C. § 523(a) seeking judgments against both Fuksas or alternatively seeking the imposition of an equitable lien (or mort-

gage) upon the 160 acre homestead of the debtor Martha Josephine Fuksa.

The parties took depositions of the various witnesses and agreed to submit this matter to the court on the record. Both sides submitted briefs. The court after studying the briefs at length set down and heard lengthy oral argument in the presence of all interested parties.

## ISSUES

1) Is Code section 523(a) applicable to a chapter 13 proceeding.

2) Should an equitable lien (or mortgage) be imposed upon the real property (or any portion thereof) of the debtor Martha Josephine Fuksa.

## FINDINGS

1) In July of 1980, the debtor Landis James Fuksa was in the process of being divorced. He approached the Waukomis State Bank (hereinafter called "Bank") for a loan of some $20,000 to enable him to complete the construction of a home he was building, to pay off approximately $36,000 in liens on property (including a trailer house) that previously had been mortgaged to the bank and was being awarded to his former wife.

2) The bank refused to lend Landis any additional funds. Landis Fuksa then approached his mother, Martha Fuksa, about helping him collateralize such a loan. Without initially knowing the amount of money needed, she agreed to help. Since the Waukomis State Bank would not set up a loan on a long term basis, the debtors then went to the Federal Land Bank in Wichita, Kansas to arrange for long term financing. The Federal Land Bank issued a letter of commitment addressed to Mrs. Fuksa for $62,800 identifying and designating her homestead as collateral, conditioned upon examination of title and a first mortgage position in favor of the Federal Land Bank. See 12 U.S.C. § 2019. Mrs. Fuksa signed the papers at the Federal Land Bank which included a mortgage to help her son. She also signed the note at the Waukomis State Bank and understood the Federal Land Bank commitment for funds had been pledged to the Waukomis Bank.

3) At the time Landis and his mother applied for the Federal Land Bank loan he was making $10.00 an hour on a 40 hour week with no deductions taken from his pay. He told Mr. Camp he had some funds coming off the house he was building. He believed the payments on the Federal Land Bank loan would be in the neighborhood of $400–$500 a month. His net monthly salary at the time of filing his proposed chapter 13 plan was $1,405.

4) On August 7, 1980 Martha and Landis returned to the Waukomis State Bank and exhibited the letter of commitment from the Federal Land Bank. Resultantly, the bank loaned fresh cash of $21,280 and cancelled the existing notes of Landis. Both parties signed a note for $58,000. At the time of this transaction John Camp III, President of the Bank, in the Fuksas' presence, telephoned Mr. Darrell Voth of the Federal Land Bank. Mr. Camp testified by deposition that he was requested by Mr. Voth not to obtain and file a mortgage on such land, since such would inhibit and complicate the Federal Land Bank processing. Landis and his mother Martha signed the note to the Waukomis State Bank that pledged the Federal Land Bank commitment as collateral. The Bank would not have made the loan to him without the pledge of the Federal Land Bank commitment and Martha's signature.

5) Subsequently, the Federal Land Bank commitment fell through because of the Fuksas' failure to get a release of a first mortgage which was on eighty of the one hundred sixty acres or obtain a subordination agreement from the first mortgage holder.

6) James J. Fuksa testified by deposition that in 1974 he gifted to his children and the widow of a deceased son, the defendant, Martha Josephine Fuksa, certain real property. He received at the same time from the defendant, Martha Josephine Fuksa, a $35,000 mortgage payable at 4% interest in $3,000 per year increments. He reserved

the election each year as to whether he would require Martha Josephine Fuksa to make the $3,000 payment. To date no funds have been paid by Martha on the note. James Fuksa has forgiven the $3,000 per year payments due to date from Martha. Martha lives on the property. He was not aware that Martha attempted to negotiate a loan on the property.

7) Shortly thereafter, when Martha Fuksa began receiving notices from the Bank about the need to make the payments on the Bank's note, she became disturbed and went to see her lawyer. Landis James Fuksa also sought advice of counsel. Ultimately, Landis and Martha Fuksa filed these chapter 13 bankruptcy proceedings.

8) At no time during times critical to the making of the loan in question, was the Federal Land Bank or the Waukomis State Bank informed of a prior existing first mortgage to James Fuksa, Landis' grandfather and Martha's father-in-law, which did in fact exist, or that a subordination thereof in the lender's favor could not be obtained.

9) Martha Josephine Fuksa testified by deposition that she owned the Southwest Quarter of Section 24, Township 20 North, Range 7 West in Garfield County. It was given to her by her father-in-law, James J. Fuksa. She gave her father-in-law a mortgage on the property and has made no payments to him on the mortgage. She leased the property for oil and gas purposes on an 18 month lease receiving $160 an acre bonus in November of 1979. The farm is cash rented to Stanley Fuksa, a brother-in-law, for $3,500 a year but the rent should be more.

10) The day Landis and Martha came to sign the note at the Bank at Waukomis, John Camp called Darrell Voth, an officer of the Federal Land Bank Association, and was advised that the money was committed and that Landis and Martha had signed the notes and mortgages at the Federal Land Bank. He did not realize and was not advised that the Land Bank commitment was in any way conditional. Camp explained to Martha when she signed the note that her name had to be first on the note

because the property was in her name and the commitment was in her name and they were making the loan to her and to him. Camp learned later of the existence of the mortgage to James J. Fuksa on half of the property owned by Martha and that the Federal Land Bank required that mortgage to be released or subordinated. In a later conversation with Jim Brooks, officer of the Federal Land Bank, Brooks advised him that they would and could complete the mortgage with Martha Fuksa on the 80 acres that was clear.

## CONCLUSIONS

### Nondischargeability

1) Title 11 U.S.C. § 1328(a) states:

"(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order of relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title except any debt—

(1) provided for under section 1322(b)(5) of this title; or

(2) of the kind specified in section 523(a)(5) of this title."

2) 11 U.S.C. § 1328(c) further provides:

"(c) A discharge granted under subsection (b) of this section discharges the debtor from all unsecured debts provided for by the plan or disallowed under section 502 of this title, except any debt—

(1) provided for under section 1322(b)(5) of this title; or

(2) of a kind specified in section 523(a) of this title."

3) Debts nondischargeable under chapter 7 of this title are dischargeable under chapter 13 of this title [except those debts under 11 U.S.C. § 523(a)(5)] (those owed to a spouse, ex-spouse or child for support or alimony) so long as such plan is carried to completion. Compare 11 U.S.C. § 1328(b). Read *Matter of Cole,* 3 B.R. 346 (Bkrtcy.W.V.1980); *In re Seely,* 6 B.R. 309

(Bkrtcy.Va.1980); *In re Graff,* 7 B.R. 426 (Bkrtcy.Ala.1980); *In re Hudson,* 9 B.R. 363 (Ill.Bkrtcy.1981); *In Re Crawford,* 10 B.R. 815 (Bkrtcy.Ala.1981); *In Re Tackaberry,* 13 B.R. 881 (Bkrtcy.Minn.1981); *In Re De-Simone,* 13 B.R. 981 (Bkrtcy.Pa.1981).

■ 4) Equity treats things agreed to be done as actually performed and regards substance rather than form. Cf. *Leedy v. Ellis County Fair Ass'n,* 188 Okl. 348, 110 P.2d 1099 (1941); *Jackson v. Jackson,* 196 Okl. 580, 167 P.2d 51 (1946); *Sinclair Oil & Gas v. Bishop,* 441 P.2d 436 (Okl.1967).

■ 5) By operation of law an equitable mortgage can be created on property which was the subject of a loan commitment. 42 Okla.Stat. (1981) § 6. And such may be enforced through available judicial procedure. 12A Okla.Stat. (1981) § 9–501. Read *Owens v. Continental Supply Co.,* 71 F.2d 862 (CA 10 1934).

■ 6) As a general rule, any written contract entered into for the intended purpose of pledging property or some interest therein as security for a debt, will constitute an equitable mortgage thereon and be enforceable in a court of equity. Read *Jones v. Hill,* 167 Okl. 552, 31 P.2d 145, 147 (1934); and authorities cited therein.

■ 7) In reliance upon defendant Martha Fuksa's presentation of the Federal Land Bank loan commitment, the Waukomis State Bank advanced $21,280 "fresh cash" to Mrs. Fuksa's son, defendant Landis Fuksa; and equity requires the impressment of an equitable mortgage (or lien) for such sum on the eighty acres of defendant Martha Fuksa not presently burdened by the first mortgage to Landis James Fuksa.

## JUDGMENT

Accordingly, it is

ORDERED and ADJUDGED that:

1) The objections as to debt dischargeability lodged against defendants Martha Josephine Fuksa and Landis James Fuksa are not maintainable in these chapter 13 proceedings.

2) Plaintiff Waukomis State Bank is awarded an equitable mortgage (or lien) for $21,280 against that eighty acre portion of the Southwest Quarter of Section 24, Township 20 North, Range 7 West of I.M. in Garfield County, Oklahoma owned by defendant Martha J. Fuksa which is not presently subject to the $35,000 mortgage held by James J. Fuksa.